IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICIA K. BALDWIN, ) Civil No.: 6:15-cv-01508-JE
 )
       Plaintiff, ) FINDINGS AND
 ) RECOMMENDATION
       v. )
 )
NANCY A. BERRYHILL,[1] )
Acting Commissioner of Social Security, )
 )
       Defendant. )
_____ )

    Kathryn Tassinari
    Mark A. Manning
    Harder Wells Baron & Manning, PC
    474 Willamette Street, Suite 200
    Eugene, OR 97401

        Attorneys for Plaintiff

    Billy J. Williams, U.S. Attorney
    Janice Hebert, Asst. U.S. Attorney
    1000 S.W. 3rd Avenue, Suite 600
    Portland, OR 97204

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 20, 2017, and is therefore substituted as the Defendant in this action pursuant to Fed. R. Civ. P. 25(d).

Sarah Elizabeth Moum
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Patricia Baldwin brings this action pursuant to 42 U.S.C. §4045(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income (SSI) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits or, in the alternative, remanding for further proceedings.

For the reasons set out below, the Commissioner's decision should be affirmed.

## Procedural Background

Plaintiff protectively filed an application for SSI on January 25, 2012, alleging she had been disabled since January 1, 2010.

After her claims were denied initially and upon reconsideration, Plaintiff timely requested an administrative hearing.

On December 12, 2013, a video conference hearing was held before Administrative Law Judge (ALJ) Marilyn Mauer. Plaintiff and Francene Geers, a Vocational Expert (VE), testified at the hearing. Plaintiff was represented by counsel.

In a decision dated January 6, 2014, ALJ Mauer found that Plaintiff had not been under a disability within the meaning of the Act since the date of her application for SSI.

On May 15, 2015, the Appeals Council denied Plaintiff's request for review. On June 17,

2015, the Appeals Council notified Plaintiff that it had set aside its denial in order to consider additional documents, but that it was again denying Plaintiff's request for review. Thus, the ALJ's decision became the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

**Background**

Plaintiff was born in 1964 and was 49 years old at the time of the ALJ's decision. She completed eighth grade and has past relevant work as a housekeeper.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

jobs that exist in significant numbers in the national economy. Id.

## Medical Record and Testimony

The court has carefully reviewed the medical record and testimony and the parties are familiar with both. Accordingly, the details of that evidence will be set out below only as they are relevant to the issues before the court.

## ALJ's Decision

At the first step of her disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 25, 2012, the application date.

At the second step, the ALJ found that Plaintiff had the following severe impairments: Crohn's disease; mild lower extremity peripheral neuropathy with mild ataxia; lumbar degenerative joint disease at L5-S1; restless leg syndrome; general anxiety disorder; attention deficit hyperactivity disorder, combined type; obsessive-compulsive disorder; mathematics disorder; mild panic disorder; and depressive disorder.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings 20 C.F.R. Part 404, Subpart P, App. 1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). She found that Plaintiff retained the capacity to perform light work with the following exceptions: Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could sit, stand and walk each for 6 hours in an 8 hour day for a combined total of 8 hours of activity but required the option to sit or stand at will while still performing essential tasks; could never climb ladders, ropes or scaffolds;

could frequently balance, climb ramps and stairs, crouch, crawl, stoop and kneel; must avoid exposure to hazards such as unprotected heights and large moving equipment; should have no concentrated exposure to inhaled irritants; required access to a bathroom and "so should not work in environments with port-a-potties or remote from a restroom." In addition, Plaintiff could understand, remember and carry out simple instructions that did not included mathematic calculations, was limited to occasional public contact and work in a predictable environment with few changes in routine. Tr. 28. In making her determination, the ALJ found that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible. Tr. 29.

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as a housekeeper.

At the fifth step of the disability analysis, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy. Based upon testimony from the VE, the ALJ cited Marker, Sorter, and Folder as examples of such work. Having concluded that Plaintiff could perform other work, the ALJ found that Plaintiff had not been under a disability within the meaning of the Act since January 25, 2012, the date her application was protectively filed. Tr. 36.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. *Roberts v. Shalala*,

66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. *Tackett*, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends the ALJ erred in failing to credit the opinion of her treating physician, Dr. James Sinnott; and in failing to give clear and convincing reasons for rejecting her subjective symptom testimony.

**I. Evaluating Medical Opinion**

As noted above, Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of treating physician, Dr. James Sinnott.

The record reflects that Dr. Sinnott began treating Plaintiff at least as early as 2001. Tr. 279, 273. In a medical evaluation dated November 1, 2012, Dr. Sinnott opined that Plaintiff had

Crohn's disease, COPD, chronic pain and anxiety. Tr. 474. He indicated that only Plaintiff's Crohn's disease had or could be expected to last at least 12 months and listed her symptoms as abdominal pain, cramps and diarrhea. Dr. Sinnott opined that Plaintiff could sit, stand and walk less than 2 hours each in an eight-hour workday and could lift up to 20 pounds occasionally. Tr. 475-476. He opined that Plaintiff would not have to lie down or rest periodically during the day but that she would miss more than two days of work per month due to her medically determinable impairments. Id.

The ALJ gave Dr. Sinnott's medical source statement minimal weight, specifically rejecting his opinions regarding Plaintiff's exertional limitations and expected absences from work. Tr. 32. The ALJ found that the exertional limitations that Dr. Sinnott endorsed were inconsistent with Plaintiff's self-reports and with the objective clinical signs and findings in his records and the records of his associates at North Bend Medical Center. The ALJ also found that Dr. Sinnott's opinion that Plaintiff would miss more than two days of work per month was not supported by the record.

### A. Applicable Standards

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995). Because treating physicians have a greater opportunity to know

and observe their patients, their opinions are given greater weight than the opinions of other physicians. *Rodriguez v. Bowen,* 876 F.2d 759, 761–62 (9th Cir.1989). Accordingly, an ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions. *Lester,* 81 F.3d at 830–31. An ALJ must provide "specific and legitimate reasons," which are supported by substantial evidence in the record, for rejecting an opinion of a treating physician which is contradicted by the opinions of other doctors. *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir.2001) (*citing Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998)).

An ALJ need not accept a doctor's medical opinion that "is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005) (*citing Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir.2001)). However, if a treating physician's medical opinion regarding the nature and severity of a claimant's impairments is not inconsistent with other substantial evidence in the record, and is well-supported by medically acceptable clinical findings, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

**B. Analysis**

Plaintiff asserts that the ALJ was required to provide clear and convincing reasons for rejecting Dr. Sinnott's opinion because that opinion was contradicted only by a non-examining physician "on a different set of facts." Pl. Reply at 2. Defendant argues that non-examining physician Dr. Martin Kehrli's conflicting opinion was sufficient to allow the ALJ to provide only specific and legitimate reasons for discounting Dr. Sinnott's opinion. Defendant further argues that, in any event, the reasons provided by the ALJ were sufficient under either standard. After a thorough review of the ALJ's decision and the record, I conclude that the ALJ provided valid

reasons for discounting Dr. Sinnott's opinion that were sufficient under even the higher "clear and convincing" standard.

First, the ALJ noted that Dr. Sinnott's opinion regarding Plaintiff's exertional limitations was inconsistent with Plaintiff's reports to Dr. Reagan that she wakes between 6:30 and 7:00am and then "will start cleaning her house which she does all day long every day." Tr. 479. Plaintiff assigns error to this conclusion, citing her testimony at the hearing that she completes her chores before 2pm in the afternoon, that she must sit down to rest intermittently and that, although she tries to do her chores every day, she sometimes cannot because of pain. Tr. 61-62.

As will be discussed below, the ALJ properly discounted Plaintiff's subjective symptom testimony. Plaintiff's inconsistent reports regarding her activities of daily living support that conclusion. However, I am not entirely persuaded that it was proper for the ALJ, having discounted the reliability of Plaintiff's reported activities, to simultaneously rely upon one version of those reported activities in rejecting the opinion of a treating physician, especially where neither the Commissioner nor Plaintiff have pointed to any other evidence in the record that corroborates either version. Although inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that opinion; *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (*citing Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir.1999)), here the record is unclear as to the actual extent of Plaintiff's activities of daily living. Nevertheless, "the ALJ is responsible for determining credibility [of subjective symptom allegations], resolving conflicts in medical [expert] testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (*quoting Andrews*, 53 F.3d at 1039). Accordingly, the Commissioner's decision must

be upheld even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039–40.

The ALJ also cited inconsistencies between the exertional limitations assessed by Dr. Sinnott and the objective clinical signs and findings in his records and the records of his associates at North Bend Medical Center. The ALJ specifically cited a lack of abdominal bloating or tenderness and Dr. Lotman's findings of only mild sensor neuropathy and only mild ataxic gait. Tr. 32. Plaintiff argues that there is no evidence in the record that bloating or tenderness is an expected or required symptom of Crohn's disease; that she has reported bloating on occasion as well as abdominal pain, nausea, and diarrhea; that her primary condition of Crohn's disease is supported by the record; that she has undergone three surgeries both prior to and during the relevant period in an effort to resolve her chronic abdominal pain and that the ALJ specifically found that she suffers from Crohn's disease. The Commissioner responds by arguing that bloating and tenderness are the most common initial manifestations of Crohn's disease and that Plaintiff's subjective complaints, properly discounted by the ALJ, do not constitute clinical findings. The Commissioner also cites objective testing in 2010 that "did not show any signs of Crohn's disease or inflammatory bowel disease, Tr. 325; a diagnosis by consulting specialist, Dr. Rajesh Ravury, ruling out Crohn's disease, Tr. 325-26; and 2012 testing that revealed only chronic gastritis with mild activity. Tr. 384.

The parties' focus on whether Crohn's disease was a legitimate diagnosis is misplaced here because the ALJ did not cite the absence of symptoms as inconsistent with such a diagnosis but rather as inconsistent with the exertional limitations Dr. Sinnott set out in his medical evaluation form. Dr. Sinnott opined that Plaintiff could sit, stand and walk less than two hours each in an eight hour workday and would be expected to miss more than two days of work per

FINDINGS AND RECOMMENDATION – 11

month. The ALJ concluded that there was "nothing in the record to indicate that [Plaintiff] is unable to sit for extended periods, or stand and walk at least six hours in and eight-hour workday." I agree.

Gastrointestinal exams regularly reflected a lack of rigidity, tenderness, or masses. Tr. 325, 329, 345, 540, 552. Treatment records show that in April 2010, Plaintiff was "doing very well" post esophagogastroduodenoscopy (EGD) and colonoscopy and had responded well to prednisone therapy but continued to report some right quadrant abdominal pain. Tr. 325. Records reflect that Plaintiff continued to report abdominal pain that remained unresolved by surgical intervention. Tr. 346, 397-398, 551, 560. Multiple laboratory screenings reflect primarily mild results, conflicting diagnoses and a failure to confirm a diagnosis of Crohn's disease. Tr. 317, 319, 325-26, 329-30,331-32,384, 389, 557.  In a treatment noted dated October 1, 2013, Plaintiff's Crohn's disease was described as "stable on Imuran and sulfasalazine." Tr. 551. Although the evidence reflects extensive investigation of and attempts at treatment for Plaintiff's abdominal complaints, on the basis of this record, it was reasonable for the ALJ to conclude that the medical record failed to support the exertional limitations or work absences assessed by Dr. Sinnott.

The medical records concerning Plaintiff's neuropathy also support the ALJ's conclusion. In August 2012, Dr. Sinnott noted Plaintiff's diagnosis of peripheral neuropathy and her reports of burning, tingling and weakness but no numbness or temperature sensitivity. Tr. 512. In January 2013, Dr. Sinnott prescribed a trial of gabapentin and referred Plaintiff to a specialist. Tr. 506. In May 2013, neurology specialist, Dr. Anton Lotman, diagnosed Plaintiff with "mild sensory neuropathy," with no progression and noted that there was "marked improvement" while on gabapentin. Tr. 502. He noted decreased sensation to pinprick and light touch but stable gait

and station with no ataxia. Id. Four months later, Dr. Lotman noted no new neurological symptoms, that Plaintiff "overall is doing fine" and that Neurontin controls her pain well. Tr. 495. In December 2013, Dr. Lotman noted that Plaintiff reported discomfort over the feet but that gabapentin helps. He observed decreased sensation to light touch, pinprick and temperature but normal sensation to proprioception and vibration with stable gait and station and no ataxia. Plaintiff was able to walk on the tips of the toes and on the heels and walk tandem. Tr. 555.

Although Dr. Sinnott served as Plaintiff's treating physician for a number of years, the ALJ provided legally sufficient reasons supported by substantial evidence in the record for discounting his opinion regarding Plaintiff's exertional limitations and expected absences from work. *See Bayliss,* 427 F.3d at 1216 (ALJ need not accept a doctor's medical opinion inadequately supported by clinical findings). Furthermore, in her RFC the ALJ adequately accounted for the limitations which were supported by the record by precluding Plaintiff from climbing ladders, ropes and scaffolds; requiring the option to sit and stand at will and providing that Plaintiff have access to a restroom. Tr. 32-33. Accordingly, the ALJ's finding should be upheld.

## II. **Plaintiff's Subjective Symptom Testimony**

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons, supported by substantial evidence, for finding that her subjective symptom allegations were not fully credible.

At the administrative hearing, Plaintiff testified that she lived with a Mr. Lamb and performed house cleaning, laundry and cooking for him in exchange for room and board. Tr. 47-48. Her medications are effective to the extent that she no longer has to go to the hospital two or three times a year. Tr. 53. However, she throws up about three times a month "if not more" and

has diarrhea every day "eight times, if not more." Tr. 53-54. She must spend about 10 to 15 minutes at a time in the restroom. Plaintiff testified that she weighed 152 pounds and a year earlier weighed 160 pounds. Tr. 54. She regularly takes a stool softener and reports that her doctors never mentioned taking medication like Imodium. Tr. 58. She experiences pain at about a 4 or 5 on a scale of 1 to 10 on an average day and that pain is "about the same" after she takes her pain medication. Tr. 55. She can sit for 20-25 minutes, stand for 15 minutes and walk for 30 minutes. She gets up at 6am, eats dinner at 1:30pm, performs her chores prior to 2pm, lies down at 2pm and goes to bed and to sleep at 7:30pm. Tr. 56-57. She only sleeps about four hours a night due to foot pain. Tr. 60. Plaintiff smokes a bowl of marijuana about once a month if she cannot sleep. Tr. 57.

## A. Standards

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted).

In evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record and consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." C.F.R. § 404.1529(c). If substantial evidence supports the ALJ's determination, it must be upheld, even if some of the reasons cited

by the ALJ are not correct. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

**B. Analysis**

Because Plaintiff's medically determinable impairments could reasonably be expected to cause some degree of symptoms and there was no evidence of malingering, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony.

Here, the ALJ offered several reasons in support of her finding that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were inconsistent with the record as a whole.

First, the ALJ found that Plaintiff's alleged limitations were inconsistent with treatment records. Specifically, the ALJ found the lack of fluctuation in Plaintiff's weight, the fact that she was not on firming medication but instead on stool softeners and the lack of documentation in the record of complaints of ongoing daily diarrhea and vomiting inconsistent with Plaintiff's allegations that she experiences these symptoms. Although the ALJ's opinion that Plaintiff's stable weight and use of stool softeners was inconsistent with severe diarrhea demonstrates common sense reasoning, I agree with Plaintiff that there is nothing in the record that provides substantial evidence for such a conclusion. However, I am not persuaded by Plaintiff's assertion that although she reported having diarrhea on several occasions, she "at no time . . . report[ed] as to the frequency of the condition." Pl. Brief at 18. Contrary to Plaintiff's assertion, descriptions of her diarrhea as "off and on," Tr. 26); "intermittent," Tr. 336; "some diarrhea," Tr. 343; and no diarrhea, Tr. 349, clearly indicate frequency and are inconsistent with Plaintiff's allegations of severe daily diarrhea. Furthermore, the ALJ reasonably concluded that treatment notes that

reflected Plaintiff's symptoms stabilized with treatment with no flares or exacerbations were inconsistent with her allegations. Tr. 33, 325, 551.

The ALJ also noted inconsistencies between Plaintiff's allegations of foot pain and the medical record. The ALJ noted Dr. Lotman's conclusion that Plaintiff had only mild sensory neuropathy that had not progressed and which was markedly improved with medication. Tr. 495, 502. Plaintiff herself indicated to providers that gabapentin treatment helped and that her medication controlled her pain syndrome. Tr. 495, 555, 556. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (holding that the ALJ may consider the effectiveness of medication in assessing claimant's credibility); *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998), *as amended* (Jan. 26, 1999) (holding that ALJ may rely upon plaintiff's use of helpful medication in discounting testimony credibility).

Internal inconsistencies in Plaintiff's reports regarding her sleep patterns and her daily activities also support the ALJ's determination regarding Plaintiff's subjective symptom testimony. The ALJ noted that in March 2012, Plaintiff wrote that she will "go three or four nights without sleep. Then I'll sleep at night. Then it starts again." Tr. 174. However, at the hearing Plaintiff testified that although she was in bed from 2pm until 6am, she sleeps "maybe four" hours a night due to foot pain. Tr. 30, 60.

As discussed above, Plaintiff reported to Dr. Reagan that she wakes between 6:30 and 7:00am and then "will start cleaning her house which she does all day long every day." Tr. 479. The ALJ noted this was in "marked contrast" to her testimony at the hearing regarding her daily schedule. Tr. 34. These inconsistencies are a sufficient basis to support the ALJ's findings regarding Plaintiff's subjective symptom testimony. *See Burch v. Barnhart*, 400 F.3d 676, 680

(9th Cir. 2005) (inconsistencies in claimant's testimony can serve as clear and convincing reason for discrediting it).

Here, the ALJ provided clear and convincing reason supported by substantial evidence for finding Plaintiff's statements less than fully credible. The ALJ's credibility finding, therefore, should be affirmed.

### III. ALJ's Step Five Findings

Plaintiff contends that the RFC and the hypotheticals presented to the VE were inadequate and thus the Commissioner did not meet her burden of proving that Plaintiff retains the capacity to perform "other work" in the national economy.

The ALJ is responsible for determining a claimant's residual functional capacity. 20 C.F.R. § 404.1546; SSR 96–5p. In doing so, the ALJ is required to consider the record as a whole, and to explain the weighing of the medical evidence and testimony concerning the claimant's residual functional capacity. SSR 96–5p. In analyzing a claimant's residual functional capacity, an ALJ may consider whether a claimant's subjective complaints are inconsistent with the record, *Bayliss,* 427 F.3d at 1217; and need not include opinion evidence that is properly discounted. *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir.2004).

Here, the ALJ adequately discussed the reasons underlying her RFC assessment and accounted for those limitations which were supported by the record. Accordingly, the ALJ did not err. *E.g., Bayliss,* 427 F.3d at 1217-18 (in making an RFC determination, ALJ need only include those limitations supported by the record and not dependent on a claimant's subjective complaints).

### Conclusion

For the reasons set forth above, the Commissioner's decision should be AFFIRMED and

a judgment should be entered DISMISSING this action with prejudice.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due May18, 2017. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 4th day of May, 2017.

            /s/ John Jelderks
            John Jelderks
            U.S. Magistrate Judge